IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | CIVIL ACTION NO. MDL 875 |
| JOHN O. ROBERTSON,<br><br>Plaintiff,<br><br>v.<br><br>CARRIER CORPORATION,<br><br>Defendant. | ED-PA Case No.:    2:09-cv-64068-ER<br><br><br>(Transferor District Court No.)<br>ND-CA Case No.:    4:09-cv-01122-CW |

**DEFENDANT CARRIER CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Plaintiffs have failed to produce sufficient evidence of a genuine issue of material fact as to exposure from a Carrier air compressor aboard the USS Enterprise. Despite plaintiffs' general reference to alleged "compressor" work throughout their opposition, the refrigeration compressors expressly identified by decedent in his deposition are entirely different pieces of equipment than the high powered turbo-driven air compressors which were the only equipment that Carrier supplied for the USS Enterprise. Decedent's deposition testimony speaks for itself; he did not work on air compressors aboard the USS Enterprise.

Even if there was evidence that decedent worked on Carrier air compressors aboard the USS Enterprise, plaintiffs' claims would be barred by the government contractor defense. Carrier air compressors supplied to the U.S. Navy for installation aboard the USS Enterprise were military equipment designed and built exclusively for the Navy and in accordance with Navy specifications. Carrier has satisfied the straightforward *Boyle* analysis and plaintiffs have produced no expert declarations to controvert the declaration of Thomas McCaffery.

There is no genuine issue of material fact with respect to exposure or applicability of the government contractor defense for Carrier. Accordingly, Carrier respectfully requests summary judgment in its favor.

## II. ARGUMENT

### A. Plaintiffs Have Produced No Evidence that Decedent was Exposed to Asbestos from Carrier Air Compressors Aboard the USS Enterprise

#### 1. There is insufficient product identification evidence because decedent did not identify Carrier air compressors

Plaintiffs have not produced any evidence that decedent worked on Carrier air compressors aboard the USS Enterprise. Plaintiffs cite to decedent's deposition testimony relating to ship's refrigeration plant compressors and conveniently refer to the equipment simply as "compressors" throughout their opposition to create the impression that his work encompassed all types of compressors, including air compressors. A review of decedent's deposition testimony cited by plaintiffs makes clear, however, that the only type of compressors decedent testified to working on aboard the USS Enterprise were compressors relating to the ship's refrigeration equipment. Compressors associated with refrigeration equipment are not air compressors. There is no testimony by decedent indicating that he worked on Carrier air compressors used in connection with the ship's aircraft catapult system or aircraft starting/cooling system.

Exhibit 3 to the declaration of Thomas McCaffery contains numerous U.S. Navy documents establishing that Carrier did not supply the refrigeration equipment and associated compressors aboard the USS Enterprise. The only Carrier equipment aboard the USS Enterprise was high-powered, turbo-driven air compressors for the ship's aircraft catapult and starting system. For example, Documents 95-9, Pages 37 to 76, is a report entitled "Report of Final Acceptance and Material Inspection of Enterprise (CVA (N) 65) Held 16-19 April 1968 by Board of Inspection and Survey." On Page 51 of Document 95-9, under the section "Refrigeration Plant and Air Conditioning," the report states, "The following compressors are installed," and identifies York as the manufacturer of all four of the air-conditioning and refrigeration compressors. On Page 50 of Document 95-9, under the section "Air Compressors," the report identifies the only Carrier equipment aboard the USS Enterprise, two

turbo-driven air compressors for the air the aircraft starting and cooling system.[1]

The refrigeration compressors identified by decedent and the high-powered turbo-driven air compressors supplied by Carrier are two completely distinguishable pieces of equipment, in spite of plaintiffs' reference to "compressors" generally. It is clear from the deposition testimony that decedent worked only on the refrigeration compressors which were not Carrier products. Decedent's testimony is insufficient to establish a genuine is of material fact, as there is no evidence that he worked on Carrier air-compressors.

### 2. Charles Ay is not qualified to provide expert opinions on whether decedent was exposed to asbestos from U.S. Navy military equipment

Plaintiffs rely solely on the declaration of Charles Ay to purportedly show that decedent was exposed to asbestos from gaskets on Carrier equipment aboard the USS Enterprise. Mr. Ay, however, is neither qualified to provide an opinion as to whether any of the marine equipment aboard Navy ships contained asbestos or that decedent was exposed to respirable asbestos fibers "far above ambient levels." Mr. Ay has no knowledge, skill, experience, or training in asbestos detection in U.S. Navy military equipment, or the levels of friable asbestos fibers allegedly released from such equipment. Mr. Ay's reported background as a commercial pipe insulator does not establish any foundation for him to conclude that decedent was exposed to asbestos fibers "above ambient levels" as a result of work on Carrier "compressors." Ay Decl., ¶ 23. Furthermore, Mr. Ay bases his opinion that gaskets removed from Carrier "compressors" aboard the USS Enterprise contained asbestos on literature regarding automotive gaskets. Ay Decl., ¶¶ 15-18. There is absolutely no explanation in Mr. Ay's declaration from which a reasonable jury could infer that because automotive gaskets allegedly contained asbestos from the 1950s to the 1980s, so too did Carrier military "compressors" installed on U.S. Navy ships. Mr. Ay has

---

[1] Based on the U.S. Navy records in Exhibit 3 of his declaration, Thomas McCaffery states that the Carrier air-compressors were initially acquired by the Navy to supply high pressure compressed air for the ship's aircraft catapult systems. McCaffery Decl., ¶ 9. When the air compressors were no longer needed for this purpose, they were converted to be used for starting aircraft engines. *Id.*

neither the general background nor the specific knowledge to support his opinion.

Thus, plaintiffs have submitted no admissible evidence that decedent was exposed to asbestos from Carrier air compressors aboard the USS enterprise, and summary judgment should be granted.

> **B.    Plaintiffs Fail to Show the Existence of a Genuine Issue of Material Fact as to Whether Carrier is Entitled to the Government Contractor Defense**
>
> > **1.    There are no threshold elements that must be proven before application of the three-part *Boyle* test**

Plaintiff's contention that there is a threshold requirement that a defendant must show the existence of a conflict between government specifications and state law before the court can apply the three-part *Boyle* test is contrary to the law. The purported "threshold" requirement is precisely that which the *Boyle* test is intended to establish.

Plaintiffs' argument has been appropriately dismissed by other courts because a correct reading of *Boyle* shows that its analysis necessarily embodies the significant conflict requirement. In *Miller v. Honeywell Intern. Inc.*, 2002 WL 31399125, *18 (S.D.Ind. 2002), the plaintiffs argued "that the Court need not even consider the three prongs of the *Boyle* test because Tedeco has failed to show that a significant conflict exists between the Government's interest in purchasing an oil filtration system and monitoring system and the operation of Indiana products liability law." *Id.* That court rejected plaintiff's argument, acknowledging that the "significant conflict" requirement is embodied in the *Boyle* test:

> In making this argument, the Plaintiffs misread *Boyle*. The Supreme Court actually held that: if military procurement officials exercise meaningful discretion with regard to a design feature which state law brands as defective, then a significant conflict between federal interests in that particular design feature and state law has, in fact, been established. The Supreme Court further held that a military contractor can demonstrate this fact by showing that the Government provided "reasonably precise specifications" and the contractor designed a product that met those specifications. <u>Thus, the existence of a significant conflict is embodied in the first two prongs of the *Boyle* test. There is no need for the contractor to make a separate showing that a significant conflict exists.</u>" *Id* (emphasis added).

Similarly, in *Tate v. Boeing Helicopters*, 921 F.Supp. 1562, 1565 (W.D.Ky. 1996), the court ruled: "The inquiry into 'significant conflict' occurs during the analysis of the first prong of *Boyle* . . ., and it is not a separate or threshold issue. Because the first prong of these tests requires the exercise of government discretion, state tort law necessarily conflicts with the government's interest in preserving the benefits of that discretion." *See also Jowers v. Lincoln*, 617 F.3d 346, 353 (5th Cir. 2010) (holding that *Boyle* does not require a "significant conflict" element in the analysis of a government contractor defense). Accordingly, plaintiffs' argument of a threshold showing of conflict before the court can reach the *Boyle* analysis is incorrect.

Furthermore, plaintiffs' contention that Carrier cannot establish the existence of a conflict without producing a contract is also incorrect. Notwithstanding the near impossibility for any government contractor defendant to locate and produce a procurement contract from over 50 years ago, the actual terms of the contract are not necessary to establish the defendant's contractual relationship with the government. *Aikins v. General Electric Co.*, 2011 WL 6415146, *1, fn. 1 (E.D.Pa. 2011). "This is so because the Defendant is not seeking to prove the content of the contract but, rather, the existence of a contractual relationship between the parties." *Id.* Here, given the highly specialized nature of military machinery intended for installation on U.S. Navy vessels, no reasonable jury could conclude that Carrier supplied equipment to the U.S. Navy without having a contractual relationship with the Government.

Thus, the law does not require that Carrier produce a contract or make a separate showing of a significant conflict for the government contractor defense to apply.

2. **The Government Contractor Defense in the Third Circuit Does Not Require Defendant to Show that the U.S. Navy Mandated the Use of Asbestos or that it Expressly Precluded Warnings Relating to Asbestos Exposure**

    a. **Carrier is not required to show that the Navy mandated the use of asbestos**

Carrier is not required to show that the U.S. Navy's specifications for its machinery specified the use of asbestos to satisfy *Boyle*. Plaintiffs cites to no contrary Third Circuit authority.

Plaintiffs' repeated overtures that there is no "significant conflict" unless the government's specifications required the use of asbestos because the contractor could simultaneously comply with both state law and a federal contract is not in line with the Third Circuit's interpretation of *Boyle*. In *Boyle*, the court noted that the government contractor defense is not dependent on there being a federal obligation that is "precisely contrary" to a state law duty, which is what plaintiffs are espousing here. In fact, the court mandated that such a rigid, bright line criteria should not be used because it would be unreasonable to say that there is always a "significant conflict" between state law and federal policy when state law is precisely contrary to a duty imposed by a government contract. For example, the court noted, "If . . . a federal procurement officer orders, by model number, a quantity of stock helicopters that happen to be equipped with escape hatches opening outward [in contravention of state law], it is impossible to say that the Government has a significant interest in that particular feature." *Boyle*, 487 U.S. at 509. Thus, there is no "significant conflict" even though the contractor's duty under the federal contract is precisely contrary to state law.

The relevant inquiry is simply whether the Government exercised its discretion in approving reasonably precise specifications for the equipment. In search of a framework for determining a "significant conflict" in the context of government procurement, the *Boyle* court looked to the discretionary function exception to the FTCA and settled on the following three-part test: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. "The first two of these conditions assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated – i.e., they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself." *Id*. Thus, the *Boyle* test may be satisfied even absent evidence that the Government mandated the use of asbestos.

Plaintiffs' attempt to create additional requirements beyond that required by the express language of *Boyle*, such as a specific Navy mandate to include asbestos, or a specific preclusion of asbestos-related warnings, is clearly contrary to *Boyle* and the Third Circuit's interpretation of *Boyle*. Application of the government contractor defense requires only that the government "approved reasonably precise specifications." The Third Circuit has clearly stated that "it is necessary only that the government approve, rather than create, the specifications [for the allegedly defective product]." *Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3rd Cir. 1993).

*Russek v. Unisys Corp.*, 921 F.Supp. 1277 (D.N.J. 1996), is instructive on the Third Circuit's application of *Boyle*. In *Russek*, postal workers asserted a design defect claim against the manufacturer of a mail sorting machine, alleging that the machine's defective keyboard design caused repetitive stress injuries to the machine operators. *Id*. at 1281. The manufacturer moved for summary judgment based on government contractor immunity on the ground that the U.S. Postal Service ("USPS") controlled the design of the keyboard. *Id*. at 1283. The manufacturer submitted affidavits establishing that the manufacturer and the USPS worked closely together in constructing the prototype for the machine, that the USPS prepared the drawings for the machines, and that the USPS retained final authority over any design changes in the drawings. *Id*. at 1283.

The postal workers opposed summary judgment on the ground that the specifications did not specifically address the ergonometric design features of the keyboard alleged to be defective. *Id*. In a detailed analysis of *Carley* and the Third Circuit's application of *Boyle*, the court ruled that where the military approved reasonably precise specifications for the product, the contractor could establish a *Boyle* defense regardless of whether the specifications expressly required or prohibited the particular design feature challenged by the plaintiff. *Id*. at 1288-89. "[W]hile the approved specifications did not address the specific ergonometric issues [alleged to be defective], they contained detailed specifications for and drawings for the keyboards and the operator stations. These specifications were certainly 'reasonably precise,' and their failure to specifically negate every possible ergonometric modification to the design does not change that

status." *Id.* at 1287-88.

The Third Circuit's approach is consistent with *Boyle*, which held, "The design ultimately selected may well reflect a significant policy judgment by Government officials whether or not the contractor rather than those officials developed the design. In addition, it does not seem to us sound policy to penalize, and thus deter, active contractor participation in the design process . . . ." *Boyle*, 487 U.S. at 513. Thus, whether or not the Navy mandated the use of asbestos, the Navy's approval of the design specifications satisfies the first prong of *Boyle*.

The declaration of Thomas McCaffery, and Exhibit 4 thereto, sets forth the numerous military specifications issued by the U.S. Navy containing very precise materials and design requirements for all air compressor equipment supplied by manufacturers for use on Navy ships. The declaration of McCaffery also establishes that by virtue of Carrier air compressor equipment being on board the USS Enterprise, it complied with all of the Navy's specifications. Thus, Carrier has satisfied the first to elements of *Boyle*.

### b. Carrier is not required to show that the Navy expressly precluded asbestos-related warnings

Plaintiffs have cited no Third Circuit authority in the failure to warn context requiring evidence that the manufacturer/contractor attempted to warn users about the hazards of asbestos but was expressly prohibited by the Navy. The Third Circuit's application of *Boyle* in the context of failure-to-warn claims is similar to the design defect context. As with design defect claims, "it is necessary only that the government approve, rather than create, the specifications . . . ." *Carley*, 991 F.2d at 1125. The Third Circuit does not modify *Carley* in failure to warn cases and, to the extent other jurisdictions "require specific warnings or prohibitions of warnings before the defense will apply," they are "incompatible with *Carley* . . . ." *Russek v. Unisys Corp.*, 921 F.Supp. 1277, 1292-1293 (D.N.J. 1996). Accordingly, in *Faddish v. General Electric Co.*, No. 09-70626, 2010 WL 4146108 (E.D.Pa. 2010), this Court properly concluded that with respect to the first prong, the contractor does not have to show an express government prohibition on asbestos-related warnings. *See also Akins*, 2011 WL 6415146. Plaintiffs fail to

8
DEFENDANT CARRIER CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

SFOiManage\166444.1

acknowledge, address, or distinguish *Faddish*.

Plaintiffs' reference to various Navy documents purporting to show that the Navy encouraged the use of warnings is also a red herring.[2] Carrier does not contend that government contractors were prohibited from providing *any* warnings with its equipment, but that the U.S. Navy, during the time period at issue, would have prohibited a manufacturer from affixing *asbestos-related* warnings on its equipment. MIL-M-15071D, which is cited by plaintiffs, reflect the Navy's standards for determining what warnings should be included in equipment manuals. Thomas McCaffery explains that MIL-M-15071 expressly required that warnings be: (1) "factual," (2) be "used as sparingly as consistent with real need," and (3) cover hazards where the violation of such operating procedures "will result in personal injury or loss of life." Declaration of Thomas McCaffery, ¶ 20. Unless the hazard met all of these requirements, a reasonable person, at the time, would conclude that a warning was neither required nor permitted by the Navy. If such a warning did not meet the Navy's strict standards, the Navy would require its removal from the text of a preliminary or draft manual's text. Thus, a warning regarding a hazard that did not meet the three tests, if proposed, would never have been included in the final manual published to the fleet where Navy personnel would have had access to it.

Mr. McCaffery further opines that while the U.S. Navy knew, prior to the mid-1960s, that exposure to asbestos dust was harmful, it did not consider asbestos dust to be sufficiently hazardous at that time to warrant warnings on equipment. McCaffery Decl., ¶ 21. It was not until after the Navy determined that asbestos dust was a potential carcinogen in 1969 were

---

[2] Plaintiffs' citation to the Navy's September 24, 1956, Uniform Labeling Program ("ULP") to show that the Navy did not expressly forbid warnings relating to asbestos is irrelevant to the government contractor defense for the reasons stated above. Furthermore, courts have repeatedly found that the Navy's 1956 ULP did not even apply to outside product manufacturers, they "governed the labeling of hazardous chemicals by Navy personnel." The courts' determination rests on the express text of the ULP which plaintiffs conveniently omitted in their opposition. *Contois v. Able Industries, Inc.*, 523 F.Supp.2d 155, 162; *Machnik v. Buffalo Pumps Inc.*, 506 F.Supp.2d 99, 104 n.2 (D.Conn. 2007); *Allen v. General Electric Co.*, No. 3: 09-cv-372, 2010 WL 918305, * 4 (D.Conn. 2010).

DEFENDANT CARRIER CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

SFO\Manage\166444 1

asbestos-containing products deemed to be sufficiently hazardous or toxic to require warning labels or great care in their handling. *Id.* Thus, McCaffery opines that prior to 1969, the hazards of asbestos exposure would not have met the requirements of MIL-M-1507 and the Navy would have rejected any attempt by a manufacturer such as Carrier to add such a warnings in its product manuals.

Plaintiffs have not produced any evidence to controvert Mr. McCaffery's explanation of MIL-M-1507 and the Navy's knowledge and procedures during the relevant time period. Plaintiffs' reference to MIL-M-1507, without more, fails to dispute that prior to 1969, the U.S. Navy would have rejected an attempt by Carrier to include an asbestos-related warning with its equipment supplied to the Navy.

### C. Plaintiffs' Argument that Carrier Must Show the Comparative Knowledge Regarding the Hazards of Asbestos Between the U.S. Navy and Carrier is Contrary to Well-Established Law

As for the third prong of *Boyle*, plaintiffs attempt to create an entirely new requirement that ignores the vast body of case law interpreting and applying *Boyle*. Plaintiffs apparently concede that the Navy had state of the art knowledge of the hazards of asbestos, but claim that the third prong of *Boyle* is not satisfied unless the defendant also demonstrates that it knew less than the Government. Plaintiffs' argument is based on an overly literal reading of the third prong which is contrary to the way it is applied by the courts, which find that evidence of the Navy's state of the art knowledge sufficient to satisfy this requirement. For example, in *Blackman v. Asbestos Defendants (BHC)*, 1997 WL 703773, *3 (N.D.Cal. 1997), the defendant contractor had no duty to warn the United States Air Force of dangers of asbestos use in military equipment where the contractor was not an asbestos manufacturer and had no greater opportunity to know of the dangers of asbestos in the 1970s than did the United States Air Force.

It is clear from this record that the U.S. Navy knew as much or more than Carrier about the hazards of asbestos. The declaration of Thomas McCaffery sufficiently establishes that the U.S. Navy had state-of-the-art knowledge regarding the hazards of asbestos, and that it would be inconceivable for a product manufacturer like Carrier to have the same level of sophisticated

10

DEFENDANT CARRIER CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

SFO\iManage\166444.1

knowledge as the Navy concerning potential hazards of asbestos. This evidence is sufficient to satisfy the third prong of *Boyle*. Plaintiffs have not submitted any contrary evidence.

### III. CONCLUSION

Plaintiffs' have failed to produce evidence of a triable issue of material fact or show that the government contractor defense is not a complete bar to their claims against Carrier. Accordingly, Carrier respectfully requests summary judgment in its favor.

DATED: March 12, 2012              RESPECTFULLY SUBMITTED,

                                   By: /s/ *John K. Son*
                                   John K. Son
                                   TUCKER ELLIS & WEST LLP
                                   515 South Flower Street,
                                   42nd Floor
                                   Los Angeles, CA 90071
                                   Telephone: 213.430.3400
                                   Facsimile: 213.430.3409
                                   john.son@tuckerellis.com
                                   Attorneys for Defendant
                                   **CARRIER CORPORATION**

## CERTIFICATE OF SERVICE

This Certificate of Service is made in compliance with Local Rule 5.1.2 and Civ.R. 5(b). I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 515 South Flower Street, 42nd Floor, Los Angeles, California 90071.

On March 12, 2012, the following document is being filed electronically and will be available for viewing and downloading from the Court's CM/ECF system:

**DEFENDANT CARRIER CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The Notice of Electronic Case Filing automatically generated by the system and sent to all parties entitled to service under the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of Pennsylvania who have consented to electronic service shall constitute service of the filed document to all such parties. Parties who have not consented to electronic service are entitled to receive a paper copy of any electronically filed pleading or other document. Any such parties will be served by regular mail.

Executed on March 12, 2012 at Los Angeles, California.

I declare under penalty of perjury that I am employed in the office of a member of the bar of the District Court for the Northern District of California and ECF registered in this Court at whose direction the service was made and that the foregoing is true and correct.

| Christine Jones | /s/ Christine Jones |
|---|---|
| (Type or print name) | (Signature) |