IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAULA ROBERTSON, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | Transferred from the |
| | : | Northern District of |
| v. | : | California |
| | : | (Case No. 08-04490) |
| | : | |
| CARRIER CORPORATION, | : | E.D. PA CIVIL ACTION NO. |
| ET AL., | : | 2:09-64068-ER |
| | : | |
| Defendants. | : | |

**FILED**

**JUN 25 2012**

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**O R D E R**

**AND NOW,** this **22ND** day of **June, 2012,** it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant

Huntington Ingalls, Inc. (Doc. No. 102) is **GRANTED.**[1]

---

[1]     This case was transferred in March of 2009 from the
United States District Court for the Northern District of
California to the United States District Court for the Eastern
District of Pennsylvania as part of MDL-875.

     Plaintiff Paula Robertson is the successor-in-interest
to and wrongful death heir of John Robertson ("Decedent" or "Mr.
Robertson"). Plaintiff alleges that Decedent was exposed to
asbestos while serving in the Navy during the period April of
1968 to September of 1969. Defendant Huntington Ingalls
Incorporated ("Huntington Ingalls") built ships. The alleged
exposure pertinent to Defendant Huntington Ingalls occurred
during Plaintiff's work aboard:

     •    USS Enterprise (CVAN-65)

     Plaintiff asserts that Decedent developed lung cancer
as a result of asbestos exposure. He was deposed in October 2010.

     Plaintiff brought claims against various defendants.
Defendant Huntington Ingalls has moved for summary judgment,
arguing that (1) Plaintiff cannot establish that Defendant (or
any product of Defendant's) caused Decedent's illness, (2) it is

immune from liability by way of the government contractor
defense, and (3) it is entitled to summary judgment on grounds of
the sophisticated user defense.

During oral argument, Plaintiff informed that Court
that she wished to withdraw all claims alleging exposure subject
to Virginia law and all arguments premised on Virginia law. In
light of this withdrawal, the parties agreed that maritime law
applies.

## I.   Legal Standard

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere existence'
of some disputed facts, but will be denied when there is a
genuine issue of material fact." Am. Eagle Outfitters v. Lyle &
Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is
"material" if proof of its existence or non-existence might
affect the outcome of the litigation, and a dispute is "genuine"
if "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts
in the light most favorable to the non-moving party. "After
making all reasonable inferences in the nonmoving party's favor,
there is a genuine issue of material fact if a reasonable jury
could find for the nonmoving party." Pignataro v. Port Auth. of
N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance
Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While
the moving party bears the initial burden of showing the absence
of a genuine issue of material fact, meeting this obligation
shifts the burden to the non-moving party who must "set forth
specific facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 250.

### B.   The Applicable Law

#### 1.   Government Contractor Defense (Federal Law)

Defendant's motion for summary judgment on the basis of
the government contractor defense is governed by federal law.  In

matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)(Robreno, J.).

        2.   State Law Issues (Maritime versus State Law)

      The parties assert that maritime law applies. Whether maritime law is applicable is a threshold dispute that is a question of federal law, <u>see</u> U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. <u>See</u> <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. <u>See</u> <u>Conner v. Alfa Laval, Inc.</u>, 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

      In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. <u>Id.</u> at 463-66 (discussing <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. <u>Id.</u> In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. <u>See</u> <u>Sisson v. Ruby</u>, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." <u>See</u> <u>Deuber v. Asbestos Corp. Ltd.</u>, No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in <u>Conner</u>) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" <u>Grubart</u>, 513 U.S. at 534 (citing <u>Sisson</u>, 497 U.S. at 364, 365, and n.2).

Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will meet the connection test necessary for the application of maritime law. Conner, 799 F. Supp. 2d at 467-69. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

It is undisputed that the alleged exposure pertinent to Huntington Ingalls occurred aboard a ship during Decedent's service in the Navy. Therefore, this exposure was during sea-based work. See Conner, 799 F. Supp. 2d 455. Accordingly, maritime law is applicable to Plaintiff's claims against Huntington Ingalls. See id. at 462-63.

C.   Bare Metal Defense Under Maritime Law

This Court has recently held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp. 2d –, 2012 WL 288364, at *7 (E.D. Pa. Feb. 1, 2012)(Robreno, J.).

D.   Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant,

4

that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in Conner v. Alfa Laval, Inc., No. 09-67099, — F. Supp. 2d —, 2012 WL 288364 (E.D. Pa. Feb. 1, 2012)(Robreno, J.), there is also a requirement (implicit in the test set forth in Lindstrom and Stark) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. Abbay v. Armstrong Int'l., Inc., No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. Stark, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. Id. at 376 (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id. Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. (quoting Harbour, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Stark, 21 F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

E.   Government Contractor Defense

To satisfy the government contractor defense, a defendant must show that (1) the United States approved reasonably precise specifications for the product at issue;

5

(2) the equipment conformed to those specifications; and (3) it warned the United States about the dangers in the use of the equipment that were known to it but not to the United States. Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988). As to the first and second prongs, in a failure to warn context, it is not enough for defendant to show that a certain product design conflicts with state law requiring warnings. In re Joint E. & S.D.N.Y. Asbestos Litig., 897 F.2d 626, 630 (2d Cir. 1990). Rather, the defendant must show that the government "issued reasonably precise specifications covering warnings-specifications that reflect a considered judgment about the warnings at issue." Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 783 (E.D. Pa. 2010)(Robreno, J.)(citing Holdren v. Buffalo Pumps, Inc., 614 F. Supp. 2d 129, 143 (D. Mass. 2009)). Government approval of warnings must "transcend rubber stamping" to allow a defendant to be shielded from state law liability. 739 F. Supp. 2d at 783.  This Court has previously cited to the case of Beaver Valley Power Co. v. Nat'l Engineering & Contracting Co., 883 F.2d 1210, 1216 (3d Cir. 1989), for the proposition that the third prong of the government contractor defense may be established by showing that the government "knew as much or more than the defendant contractor about the hazards" of the product. See, e.g., Willis v. BW IP Int'l, Inc., 811 F. Supp. 2d 1146 (E.D. Pa. Aug. 29, 2011)(Robreno, J.); Dalton v. 3M Co., No. 10-64604, 2011 WL 5881011, at *1 n.1 (E.D. Pa. Aug. 2, 2011) (Robreno, J.). Although this case is persuasive, as it was decided by the Court of Appeals for the Third Circuit, it is not controlling law in this case because it applied Pennsylvania law. Additionally, although it was decided subsequent to Boyle, the Third Circuit neither relied upon, nor cited to, Boyle in its opinion.

   F.   Government Contractor Defense at Summary Judgment Stage

        This Court has noted that, at the summary judgment stage, a defendant asserting the government contractor defense has the burden of showing the absence of a genuine dispute as to any material fact regarding whether it is entitled to the government contractor defense. Compare Willis, 811 F. Supp. 2d at 1157 (addressing defendant's burden at the summary judgment stage), with Hagen, 739 F. Supp. 2d 770 (addressing defendant's burden when Plaintiff has moved to remand). In Willis, the MDL Court found that defendants had not proven the absence of a genuine dispute as to any material fact as to prong one of the Boyle test since plaintiff had submitted affidavits controverting defendants' affidavits as to whether the Navy issued reasonably

precise specifications as to warnings which were to be placed on
defendants' products. The MDL Court distinguished <u>Willis</u> from
<u>Faddish v. General Electric Co.</u>, No. 09-70626, 2010 WL 4146108 at
*8-9 (E.D. Pa. Oct. 20, 2010)(Robreno, J.), where the plaintiffs
did not produce any evidence of their own to contradict
defendants' proofs. Ordinarily, because of the standard applied
at the summary judgment stage, defendants are not entitled to
summary judgment pursuant to the government contractor defense.

     G.  <u>Sophisticated User Defense Under Maritime Law</u>

        This Court has previously held that it will not grant
summary judgment on grounds of the sophisticated user defense
when maritime law applies because maritime law has not recognized
this defense in situations involving an intermediary, such as the
Navy. <u>Prange v. Alfa Laval, Inc.</u>, No. 09-91848, 2011 WL 4912828,
at *1 (E.D. Pa. July 22, 2011)(Robreno, J.).

## II. **Defendant Huntington Ingalls's Motion for Summary Judgment**

### A. **Defendant's Arguments**

<u>Product Identification / Causation</u>

        Huntington Ingalls argues that Plaintiff cannot
establish her strict products liability claim against it because
(1) Plaintiff cannot show that Huntington Ingalls manufactured a
"product" (i.e., a ship is not a product), (2) Plaintiff has no
evidence that Huntington Ingalls caused Decedent's illness, and
(3) Plaintiff has no evidence that any asbestos to which Decedent
was exposed was originally installed by Huntington Ingalls.

        It argues that this is true for various reasons,
including the fact that the ship at issue was built and
commissioned several years (approximately seven (7) years) prior
to Decedent's work aboard it, and underwent several overhauls
before Decedent's work aboard it. In support of this argument,
Defendant provides the following evidence:

          •  <u>Declaration of Admiral Roger B. Horne, Jr.</u>
             The report of Admiral Horne, which appears as
             Exhibit 1 to his declaration, states that (1)
             there was no asbestos insulation involved
             with refrigeration units, (2) it is unlike
             that gaskets used in refrigeration units

contained asbestos, and (3) "due to the age
of the ship by the time Mr. Robertson
reported aboard, there would have been no
original packing and limited gasket material
installed when the ship was built."

(Doc. No. 102-4 at p. 2.)

• <u>Declaration of Sheldon H. Rabinovitz, Ph.D.</u>
Dr. Rabinovitz, a certified industrial
hygienist, states: "[I]t is my professional
opinion . . . that Mr. Robertson was not
exposed to a dose of asbestos that would
increase his risk of developing any fibrotic
asbestos-related disease or lung cancer from
replacing some gaskets on equipment or from
being in the area while others handled
gaskets and packing on pumps and valves while
serving for a limited time period on the <u>USS
Enterprise</u>. In my opinion, gasket and packing
replacement, as is sometimes required in the
maintenance of compressors, pumps, and valves
used on ships would not result in exposures
to harmful levels of asbestos. It is my
further opinion that Mr. Robertson's mere
presence on the <u>USS Enterprise</u> for
approximately 21 months would not have
exposed him to a dose of asbestos from
thermal insulation or other asbestos-
containing products that would increase his
risk of developing any fibrotic asbestos-
related disease or lung cancer. During normal
operation, pipe and fitting insulation
materials are not disturbed and no
significant, if any, fiber emissions would
occur."

(Doc. No. 102-3 ¶¶ 8-10.)

<u>Government Contractor Defense</u>

Huntington Ingalls asserts the government contractor
defense, arguing that it is immune from liability in this case,
and therefore entitled to summary judgment, because the Navy
exercised discretion and approved reasonably precise
specifications for the products at issue, Defendants provided

warnings that conformed to the Navy's approved warnings, and the Navy knew about the hazards of asbestos. In asserting this defense, Huntington Ingalls relies upon the affidavits of Admiral Roger B. Horne, Jr., U.S. Navy Commander Thomas McCaffrey, and Sheldon H. Rabinovitz, Ph.D. (a certified industrial hygienist).

With its reply brief, Huntington Ingalls has submitted objections to Plaintiff's evidence pertaining to the government contractor defense.

Sophisticated User Defense

Huntington Ingalls asserts that Plaintiff's failure to warn claims are barred by the sophisticated user defense.

**B.  Plaintiff's Arguments**

Product Identification / Causation

With respect to her strict products liability claim, Plaintiff contends that Defendant manufactured a product (i.e., that a ship is a "product" within the context of strict products liability law). Plaintiff contends that a ship is comparable to a mass-produced home. In support of this contention, Plaintiff cites to California caselaw: Kriegler v. Eichler Homes, Inc., 269 Cal. App. 2d 224 (Cal. App. 1969) and Price v. Shell Oil Co., 2 Cal.3d 245 (Cal. 1970). Plaintiff also cites to comment d of Section 402A of the Restatement (Second) of Torts, which identifies, inter alia, cars and airplanes as being "products" subject to strict products liability law.

Plaintiff also contends generally that Defendant has not shifted its burden, as "Defendant offers no evidence that the insulation to which decedent John Robertson was exposed was not installed by defendant when it built the USS Enterprise." (Opp. at 13.)

In support of her assertion that she has identified sufficient evidence of product identification/causation to survive summary judgment, Plaintiff cites to the following evidence:

- Deposition Testimony of Decedent
  Decedent testified that he worked aboard the USS Enterprise in 1968 and 1969, as a petty officer in charge of all the air conditioning

and refrigeration equipment on the ship. He testified that, as part of this job, he did "all repairs, all troubleshooting" on the air conditioning and refrigeration equipment. He testified that he did not have to remove or disturb insulation in order to add refrigerant to the equipment.

Decedent testified that he worked around other workers – machinist mates – who removed insulation from the chill water lines, which ran all over the ship. He testified that insulation was all over the ship. He testified that, during an overhaul of the ship at Newport News, he testified that he saw insulation being torn out of the ships every day. He testified that this removal work was going on both in his work area, as well as all over the ship.

When asked whether he knew the repair history of the <u>Enterprise</u> prior to his working aboard it, he answered, "I do not recall." When asked if he had any information or knowledge as to what the insulation material was made out of, he answered, "No, no way of knowing."

(Pl. Ex. 1, Doc. No. 109-1, pp. 125-143 and 167-171.)

• <u>Declaration of Expert Charles Ay</u>
Mr. Ay states in his declaration that during regular overhauls, pipe insulation was only removed as necessary to complete projects, and much of the existing insulation was not removed. He concludes that, **"despite the <u>USS Enterprise</u> likely having undergone some repairs – and even an overhaul – by 1968, the overwhelming majority of the thousands of feet of originally installed, asbestos-containing thermal pipe insulation was more likely than not still present aboard the ship in areas where decedent lived and worked, including the machinery spaces, passageways and berthing compartment."** He states that it is his opinion that "more likely than not,

10

while some of the original asbestos-
containing pipe insulation aboard the <u>USS
Enterprise</u> would have been removed during
prior repairs, the majority would have
remained all throughout the ship."

Mr. Ay also opines that, "more likely than
not, decedent John Robertson, when working as
a refrigeration and air conditioning
mechanic, worked throughout most of the ship
because the refrigeration and air
conditioning equipment and delivery systems
went throughout the ship." He opines that,
"[b]ecause less than 7 years had passed
between the time the ship was commissioned
and decedent was aboard the ship, ... and
[because] there were thousands of feet of
asbestos-containing insulation originally
installed on the ship, it is also more likely
than not that decedent was exposed to
respirable asbestos fibers, far above ambient
levels, from asbestos-containing pipe
insulation installed on the <u>USS Enterprise</u>
during its original construction. This is
true for all of his time aboard the ship,
including the time at sea in the course of
his normal duties as well as while the ship
was being repaired and overhauled at various
repair facilities."

Mr. Ay states that **"more likely than not,
merely being aboard the <u>USS Enterprise</u>
exposed decedent John Robertson to respirable
asbestos fiber emitted from thermal
insulation materials on the ship, including
chill water pipe insulation." He concludes by
asserting that it is his opinion that "the
thermal pipe insulation on the <u>USS Enterprise</u>
described by Mr. Robertson contained asbestos
and that he inhaled respirable asbestos
fibers from the asbestos-containing thermal
pipe insulation installed aboard the <u>USS
Enterprise</u> during its original construction
as a result of the activities described
above.** Such an exposure would have been

continuous, above background levels and substantial throughout the almost two years he was aboard the ship."

(Pl. Ex. 2, Doc. No. 109-1 ¶¶ 23, 26, 29, 32-33, and 35 (emphasis added).)

- Declaration of Expert Herman Bruch, M.D. Dr. Bruch states in his declaration that each and every exposure to asbestos above background levels, given sufficient minimum latency, experienced by a person with asbestosis is a substantial contributing factor in the development of the disease.

(Pl. Ex. 3, Doc. No. 109-3, ¶ 27.)

Government Contractor Defense

Plaintiff argues that summary judgment in favor of Defendant on grounds of the government contractor defense is not warranted because there are genuine issues of material fact regarding its availability to Defendant. Plaintiff contends that Defendant has (1) not produced its contract with the government or otherwise proven that it was a government contractor, and (2) not demonstrated a genuine significant conflict between state tort law and fulfilling its contractual federal obligations (i.e., that its contractual duties were "precisely contrary" to its duties under state tort law). Furthermore, Plaintiff asserts that the government contractor defense is not warranted because (3) SEANAV Instruction 6260.005 makes clear that the Navy encouraged Defendant to warn, (4) military specifications merely "rubber stamped" whatever warnings Defendant elected to use (or not use) and do not reflect a considered judgment by the Navy, (5) there is no military specification that precluded warning about asbestos hazards, and (6) Defendant cannot demonstrate what the Navy knew about the hazards of asbestos relative to the knowledge of Defendant, nor that the Navy knew more than it did at the time of the alleged exposure.

To contradict the evidence relied upon by Defendant, Plaintiff cites to (a) MIL-M-15071D, and (b) SEANAV Instruction 6260.005, each of which Plaintiff contends indicates that the Navy not only permitted but expressly required warnings.

---

Plaintiff has also submitted objections to Defendant's evidence pertaining to the government contractor defense (expert affidavits of Admiral Horne, Commander McCaffrey, and Dr. Rabinovitz).

Sophisticated User Defense

Plaintiff cites to a previous decision of this Court in asserting that maritime law does not recognize a sophisticated user defense.

**C.  Analysis**

Plaintiff alleges that Decedent was exposed to asbestos from insulation aboard a ship manufactured by Defendant Huntington Ingalls, and that Huntington Ingalls is liable for his illness because it installed that insulation on the ship. There is evidence that Decedent worked aboard the USS Enterprise for about one (1) to two (2) years, and that this work began about seven (7) years after the ship was built. The parties do not dispute that this ship was built by Defendant. There is evidence that Decedent was present when insulation used for "chill water lines" (i.e., pipe insulation) was ripped out.

There is expert opinion testimony from Mr. Ay that this insulation likely contained asbestos, and that the overwhelming majority of insulation present on the ship at the time of Decedent's work was original insulation installed by the shipbuilder. There is also expert opinion testimony from Mr. Ay that Decedent would have inhaled substantial amounts of dust from the insulation.

Importantly, however, there is no evidence from anyone with personal knowledge as to whether the insulation Decedent saw contained asbestos, whether Decedent inhaled dust from the rip-out work he saw, or whether (or which portions of) insulation on the ship was original insulation installed (i.e., supplied) by Defendant. The opinion of Plaintiff's expert, Mr. Ay, while based on experience, is yet impermissibly speculative. See Lindstrom, 424 F.3d at 492 (quoting Harbour, 1991 WL 65201, at *4). Therefore, even when construing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from original insulation installed by Defendant such that it was a "substantial factor" in the development of his illness, because any such finding would be impermissibly conjectural. See Lindstrom, 424

13

E.D. PA NO. 2:09-64068-ER          **AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

_____

F.3d at 492; <u>Stark</u>, 21 F. App'x at 376; <u>Abbay</u>, 2012 WL 975837, at *1 n.1.

   With respect to asbestos to which Plaintiff may have been exposed aboard the ship, but which was not manufactured or supplied (e.g., installed) by Defendant, the Court has held that, under maritime law, Defendant cannot be liable. <u>Conner</u>, 2012 WL 288364, at *7. Accordingly, summary judgment in favor of Defendant Huntington Ingalls is warranted. <u>Anderson</u>, 477 U.S. at 248.

   The Court notes for the sake of clarity that, in granting Huntington Ingalls's motion, it has not decided whether a ship is a "product" or whether a shipbuilder has a duty to warn of the hazards associated with various products aboard the ships it builds.

   In light of the Court's determination above, it is not necessary to reach Defendant's other arguments.

14